**AFFIRM; and Opinion Filed March 17, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01614-CV

## IN THE INTEREST OF Z.S., A CHILD

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-1102-X**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lang-Miers

Father appeals from the trial court's judgment terminating his parental rights to Z.S. In his sole issue on appeal, Father argues that the evidence is factually insufficient to support the jury's finding that termination was in Z.S.'s best interest. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.4. We affirm the trial court's judgment.

### Background

Z.S. was born in October 2012. Two days after Z.S.'s birth, an investigator with the Dallas County Child Protective Services Unit (CPS) of the Texas Department of Family and Protective Services (the Department) visited the hospital to investigate whether CPS should take custody of Z.S. because of events related to the death of Z.S.'s brother, C.S., in April 2011. C.S. died from abusive head trauma when he was three months old, and Father had been charged with murdering him. At the time of C.S.'s death, Mother and Father did not live together, but they married after C.S. died. When the investigator learned that Mother and Father were living

together, CPS took custody of Z.S. and ultimately placed him with a maternal aunt. Mother, the Department, and the maternal aunt reached an agreement regarding custody of Z.S.

Meanwhile, Father was convicted of C.S.'s murder and sentenced to 25 years in prison. The Department moved to terminate Father's parental rights to Z.S., alleging the murder of C.S. as one of three grounds for termination. TEX. FAM. CODE ANN. § 161.001(1)(L) (West Supp. 2013). The other two grounds alleged were knowingly placing or allowing the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, and engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *Id.* § 161.001(1)(D), (E). The jury found against Father on the grounds alleged for termination and also found that termination of Father's parental rights was in Z.S.'s best interest. On appeal, Father challenges the factual sufficiency of the evidence to support the jury's best interest finding.

**Standard of Review**

The natural right between a parent and child is of constitutional dimension, and we apply the clear and convincing standard of proof to strictly scrutinize proceedings seeking to terminate that right. *In re K.A.F.*, No. 05-12-01582-CV, 2013 WL 3024864, at *9 (Tex. App.—Dallas June 14, 2013, no pet.) (mem. op) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). The clear and convincing standard of proof is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

A strong presumption exists that keeping a child with a parent is in the child's best interest. *In re K.A.F.*, 2013 WL 3024864, at *12 (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex.

2006)). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008).

In reviewing the factual sufficiency of the evidence to support a jury's best interest finding, we consider and weigh all the evidence, but we give due deference to the factfinder's resolution of factual questions. *In re K.A.F.*, 2013 WL 3024864, at \*14. We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that termination was in the child's best interest. *Id.* In making our determination, we may consider evidence establishing the predicate ground for termination along with several nonexclusive factors relevant to best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors); *In re K.A.F.*, 2013 WL 3024864, at \*12–13. Included in the nonexclusive factors we consider are "the emotional and physical danger to the child now and in the future" and "the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one." *Holley*, 544 S.W.2d at 372. The Department is not required to prove all the factors. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

### Analysis

It is undisputed that Father has been sentenced to serve 25 years in prison for C.S.'s murder. However, Father argues that "Z.S. needs a relationship with his paternal relatives so that he will have a male influence in his life." He contends that if his relationship with Z.S. is terminated, Z.S.'s relationship with his paternal relatives is foreclosed.[1]

Sometimes the evidence of the parent's offending behavior or evidence of a single *Holley* factor may be sufficient to allow a factfinder to reasonably form a firm belief or conviction that

---

[1] We note that there is no evidence in the record that the grandparents have filed a petition for reasonable access to Z.S. *See* TEX. FAM. CODE ANN. § 161.206(c) (West 2008) ("Nothing in this chapter precludes or affects the rights of a biological or adoptive maternal or paternal grandparent to reasonable access under Chapter 153.").

termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28; *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). This is such a case.

The jury heard that when C.S. was about one month old, he sustained first, second, and third degree burns on the lower half of his body when Father placed him in extremely hot water. Father told the doctors that C.S. had a large bowel movement that went up his back, and Father put C.S. in the water. He put him in the water again before he realized it was scalding hot. There was evidence that a repair had been made recently in the home and the water was unusually hot, but Dr. Matthew Cox, the medical director of REACH (Referral and Evaluation of At Risk Children) and one of C.S.'s doctors, testified that water hot enough to cause those burns would have been hot enough for Father to feel the radiant heat before putting C.S. in it. Cox testified that the burns were consistent with being immersed in "scalding hot water."

The jury also heard that about two months later C.S. was admitted to Children's Medical Center unresponsive and on life support. Tests and x-rays showed that C.S. had bruises on his arms and eyelids; more than 30 broken bones in various stages of healing, mostly involving his ribs; hemorrhages in his adrenal gland and around the surface of his brain; injuries to his muscles, ligaments, and spine in his neck; hemorrhage in the retina of his right eye; swelling in his brain; and dying brain tissue. Father told the doctors that C.S. had become unresponsive and Father tried to resuscitate him by shaking him and performing CPR. Cox testified that it was uncommon to break a child's ribs when giving the child CPR because the bones are pliable. He also said C.S.'s injuries were in various stages of healing, which was inconsistent with Father's explanation.

The jury also heard that C.S. had a blistered, second degree burn on his fingers and the back of his hand that did not exist when C.S. was treated earlier for burns. Father told the

doctors that water dripped on C.S.'s hand while Father was preparing a bottle, but Cox testified that the injury was inconsistent with a drip and looked like an immersion burn.

The jury was told that C.S. never regained consciousness. The doctors ruled out diseases related to weakening of the bones, accident, and birth trauma. Cox testified that C.S. suffered "torture," "repeated inflicted injuries," and a "severe head injury" from a "violent, traumatic event" "such as . . . shaking or shaking with an impact type event." He said the cause of C.S.'s death was abusive head trauma. Cox testified that 80% of the children who survive this type of head trauma "have life long disabilities of some sort" ranging from learning problems to being completely dependent on others with a feeding tube, a breathing tube, and confinement to a wheelchair.

Father presented evidence of his good character, Christian upbringing, and strong moral values and work ethic. He presented evidence that his family is loving and wants a relationship with Z.S., and that it is important for Z.S. to have a relationship with his paternal relatives. The Department presented evidence that Father's relatives did not believe Father was responsible for C.S.'s death.

Having considered the evidence in light of the standard of review and the relevant *Holley* factors, we conclude that the evidence that Father was convicted of murdering C.S. through physical abuse when C.S. was only three months old is sufficient evidence to allow the jury to reasonably form a firm belief or conviction that termination of Father's parental rights to Z.S. was in Z.S.'s best interest. *See In re C.H.*, 89 S.W.3d at 28; *In re D.M.*, 58 S.W.3d at 814. We resolve Father's sole issue against him.

## Conclusion

We affirm the trial court's judgment.


      /Elizabeth Lang-Miers/
      ELIZABETH LANG-MIERS
      JUSTICE


131614F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF: Z.S., A CHILD

No. 05-13-01614-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas

Trial Court Cause No. 12-1102-X.

Opinion delivered by Justice Lang-Miers, Justices Francis and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Texas Department of Family and Protective Services recover its costs of this appeal from appellant Christopher Jerod Smith.

Judgment entered this 17th day of March, 2014.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE